IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Samuel Hepburn,  #243604 ) | | |
| ) | | |
| Petitioner, ) | Civil Action No.: 6:11-cv-2016-RMG | |
| ) | | |
| v. ) | | |
| ) | **ORDER** | |
| Warden Willie L. Eagleton, ) | | |
| ) | | |
| Respondent. ) | | |
| _____ ) | | |

In this case, Petitioner filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. As a result, this case was automatically referred to a United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c) DSC. Respondent submitted a motion for summary judgment on December 9, 2011. (Dkt. No. 23). Petitioner then filed a motion for summary judgment on February 10, 2012. (Dkt. No. 33). On July 20, 2012, the Magistrate issued its Report and Recommendation that this Court grant Respondent's motion for summary judgment and deny Petitioner's motion for summary judgment. (Dkt. No. 40). Petitioner subsequently filed his objections to the Report and Recommendation on August 24, 2012. (Dkt. No. 48). For the reasons set forth below, Respondent's motion for summary judgment (Dkt. No. 23) is granted and Petitioner's motion for summary judgment (Dkt. No. 33) is denied.

**Law/Analysis**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific

objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.* In the absence of specific objections to the Report and Recommendation, this Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provisions apply to this present habeas corpus petition filed on July 28, 2011.[1] Under AEDPA, "[a] 1 year time period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court." 28 U.S.C. § 2244(d)(1). The one-year time period runs from the latest of "the date on which the judgment became final by the conclusion of a direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). However, "[t]he time during a properly filed application for State post-conviction or collateral relief with respect to the pertinent judgment or claim that is pending shall not be counted toward any period of limitation under this subsequent section." *Id.* § 2244(d)(2). Petitioner was found guilty of murder on June 6, 2001, and timely filed a direct appeal.[2] (Dkt. No. 40 at 2). Because Petitioner filed a direct appeal, his state court conviction became final on November 13, 2003; therefore, he had one year from November 14, 2003, to file his federal habeas corpus action unless the period was at any time tolled for any properly filed state

---

[1] The federal petition was filed on August 2, 2011. However, per the holding in *Houston v. Lack*, 487 U.S. 266, 270-71 (1988), and the fact that the date stamped on the back of the petition's envelope is unreadable, the court will assume the petitioner delivered the petition to prison authorities on date Petitioner signed the petition, July 28, 2011 (*see* Dkt. Nos. 1, 1-2).

[2] Petitioner pleaded guilty to voluntary manslaughter on August 12, 1997, based on the same indictment on which he was later tried for murder. (Dkt. No. 1 at 1). Petitioner had his guilty plea vacated following a successful application for post-conviction relief based on a misunderstanding between the solicitor and his attorney regarding his sentence. (*Id.* at 6). Petitioner was then tried for murder and found guilty on June 6, 2001. (Dkt. No. 22-3 at 89).

application for Post-Conviction Relief ("PCR"). 28 U.S.C. § 2244(d)(2); *see Hernandez v. Caldwell*, 225 F.3d 435, 438-39 (4th Cir. 2000).

The Petitioner filed an application for PCR on October 12, 2004, or 334 days after his clock for filing a federal habeas petition began to run. (Dkt. No. 40 at 3). As a result, Petitioner had only 31 days remaining in which to file a federal habeas petition unless the statute was otherwise tolled. Following an evidentiary hearing, Petitioner's PCR application was dismissed on February 10, 2006. (Dkt. No. 40 at 4). Following the dismissal, Petitioner's clock to file a federal habeas petition began to run once again on March 14, 2006, or the day after the thirty-day period in which Petitioner could have timely appealed the dismissal. On December 8, 2008, more than two years after his PCR was dismissed, Petitioner filed a second PCR application arguing that he should be allowed to belatedly appeal the denial of his first PCR because his attorney failed to file an appeal as he requested. (*Id.*). The Petitioner was granted an *Austin*[3] appeal on October 21, 2009, allowing him to file a belated appeal of his first PCR. Petitioner filed a notice of appeal on November 23, 2009. After a review of the record, the South Carolina Supreme Court denied Petitioner's petition for writ of certiorari. The Supreme Court then denied Petitioner's request for rehearing on July 21, 2011. Petitioner then filed this federal habeas petition on July 28, 2011.

Because Petitioner did not timely file an appeal following the dismissal of his first PCR application, "[t]he only issue to be determined is whether the initial APCR was 'pending,' as meant by the AEDPA, during the time between the state court's initial denial of the APCR and the state court's allowance of a belated appeal of that APCR." *McHoney v. South Carolina*, 518 F. Supp. 2d 700, 704-05 (D.S.C. 2007). The Supreme Court stated that "the time that an

---

[3] In *Austin*, the South Carolina Supreme Court allowed a petitioner to file a late appeal of the denial of his PCR, where the failure to timely file the appeal was the result of the action or inaction of his attorney. *Austin v. State*, 409 S.E.2d 395, 396 (1991).

application for state post conviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, *provided that the filing of the notice of the appeal is timely under state law.*" *Id.* at 704 (*citing Evans v. Chavis*, 546 U.S. 189, 192 (2006)). "The fact that the state court allowed a belated appeal does not make the notice of appeal 'timely.'" *Id.* at 705. The Eleventh Circuit has held that the AEDPA's § 2244(d)(2) statutory tolling provision does not encompass the period of time in which a state prisoner does not have a "properly filed" post-conviction application actually pending in state court. *Id.* at 705 (*citing Moore v. Crosby*, 321 F.3d 1377, 1380-81 (11th Cir. 2003)). Furthermore, the Court explained that "a state application filed after expiration of the limitations period does not relate back so as to toll idle periods preceding the filing of the federal petition." *Moore*, 321 F.3d at 1381. Thus, "once the state-mandated time in which to appeal the denial of the APCR has run, the APCR is no longer 'pending,' even if the state court later allows the untimely appeal." *McHoney*, 518 F. Supp. 2d at 705 (*citing Moore*, 321 F.3d at 1381).

Here, based on the reasoning cited above, the petitioner's first PCR application did not remain "pending" under § 2244(d)(2) during the time period between the denial of the first PCR application and the grant of the belated appeal. Accordingly, the federal petition is untimely.

Petitioner argues, however, that he is entitled to equitable tolling due to extraordinary circumstances outside of his control. Specifically, Petitioner asserts that he is entitled to equitable tolling due to his first PCR attorney's illness during the time period for filing the PCR appeal. (Dkt. No. 34 at 5-9). The Court agrees. Equitable tolling is reserved "for only those rare instances where - due to circumstances external to the party's own conduct - it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). In *Holland v. Florida*, 130 S.

Ct. 2549 (2010), the Supreme Court rejected a *per se* rule regarding equitable tolling, and instead directed courts to take a flexible case-by-case approach. *Id.* at 2563-64. The *Holland* Court noted that precedent should guide a court's analysis, but with the awareness that particular facts can warrant special treatment. *Id.* at 2563. Petitioner presented evidence that his attorney confirmed he would timely file the appeal. (Dkt. No. 34-2 at 1). Petitioner asked his mother on January 12, 2006, the day after his PCR hearing, to call his attorney and confirm he would be filing the appeal. (*Id.*). Petitioner's mother's affidavit states she called the attorney and he personally confirmed to her that it was his responsibility to file the appeal and that he would timely file the appeal. (*Id.*). Petitioner's mother then relayed this information to Petitioner. (*Id.*). Petitioner showed he then later sought to determine the status of his appeal. (*Id.*). Petitioner's father stated through his affidavit that in July 2007, Petitioner called him requesting that he confirm the status of his appeal with the clerk's office of the South Carolina Supreme Court. (*Id.* at 2). Petitioner's father called the clerk's office and was informed that no notice of appeal had been filed in Petitioner's case. (*Id.*). Petitioner's father then arranged for another attorney to pursue Petitioner's appeal. (*Id.*). The attorney hired to pursue the belated appeal confirmed that Petitioner's first attorney failed to file his appeal timely due to a sudden and serious illness. (Dkt. No. 36). She also confirmed that it was difficult to communicate with the attorney and that it took her several attempts to do so. (*Id.*). The Court finds that, under the particular facts of this case, that Petitioner is entitled to equitable tolling. *See Fleming v. Evans*, 481 F.3d 1249, 1255-58 (10th Cir. 2007) (finding grounds for equitable tolling where attorney misrepresented he was pursuing appeal).

Although the Court finds Petitioner is entitled to equitable tolling, the petition falls on its merits. Petitioner's claims are governed by 28 U.S.C. § 2254(d), which provides that his petition

cannot be granted unless the claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor,* 529 U.S. 362, 411 (2000). Importantly, "a determination of a factual issue made by a State court shall be presumed to be correct" and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Petitioner states four grounds in his petition: 1) Violation of the 5th Amendment's Double Jeopardy Clause, 2) Violation of 5th Amendment Due Process, 3) Violation of 5th Amendment Due Process, and 4) Ineffective Assistance of Counsel. The Court discusses each of Petitioner's grounds below.

1. *Double Jeopardy*

Petitioner asserts that his conviction for murder violates the Double Jeopardy clause because he was previously granted PCR following a guilty plea to voluntarily manslaughter based on the same indictment. (Dkt. No. 1 at 5). The Court finds the PCR judge correctly applied federal law in denying this ground. *See North Carolina v. Pearce,* 395 U.S. 711, 720 (1969) *overruled on other grounds by Alabama v. Smith,* 490 U.S. 794 (1989) (holding Double Jeopardy clause imposes no limits on retrying defendant who has succeeded in getting first conviction set aside). Further, the exception to this rule stated in *Bullington v. Missouri,* 451

U.S. 430, 442 (1981), is inapplicable here because Petitioner's guilty plea was overturned based on a misunderstanding regarding Petitioner's sentence, not because the evidence was insufficient to convict. (Dkt. No. 1 at 5). Therefore, the Court holds that Respondent is entitled to summary judgment as to ground one.

2. *Due Process*

Petitioner claims he was denied his constitutional right to due process of law because the State showed vindictiveness in his trial by allowing a private attorney to prosecute the case, upgraded his charge, refused to offer a plea, and offered ballistics testimony the trial court ruled inadmissible. (Dkt. No. 1 at 6).

The PCR judge did not incorrectly apply federal law in finding the use of a private prosecutor is not a violation of due process. The judge found that the county solicitor was present and involved at the trial, and that he did not turn over all control of the case. (Dkt. No. 22-3 at 84). There was no evidence that the private prosecutor was simultaneously involved in a civil case against the Petitioner. In these circumstances, the PCR judge did not unreasonably apply federal law in holding Petitioner's right to due process was not violated. *See Jones v. Richards*, 776 F.2d 1244, 1246-47 (4th Cir. 1985); *Riner v. Edwards*, No. 7:07-455, 2008 WL 4388788 (W.D. Va. Sept. 26, 2008).

The Court finds the PCR judge did not made an unreasonable determination of the facts or unreasonably apply federal law in finding a lack of vindictiveness as well. To establish vindictiveness, "a defendant must show through objective evidence that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." *United States v. Johnson*, 325 F.3d 205, 210 (4th Cir. 2003) (internal quotation omitted). Petitioner argues that the state's failure to negotiate a plea was evidence of

vindictiveness (Dkt. No. 34 at 29-32), however, the PCR judge held that this was not evidence establishing vindictiveness. (Dkt. No. 22-3 at 92). The Court holds that a failure to offer a plea is not objective evidence of animus and agrees with the PCR judge. *See McKinley v. Mitchell*, No. 1:09-265-RJC, 2011 WL 5119377, at *8 (W.D.N.C. Oct. 28, 2011) ("there is no constitutional right to a plea bargain") (*citing Weather v. Bursey*, 429 U.S. 545, 561 (1977)); *London v. United States*, No. 3:09-287-02-W, 2009 WL 2462180, at *8 (W.D.N.C. Aug. 10, 2009) (holding government's decision not to offer plea bargain is not evidence of vindictiveness). Petitioner also cannot show vindictiveness based on his trial for murder because he had his plea to a lesser included offense overturned. *See United States v. Whitley*, 759 F.2d 327, 333 (4th Cir. 1985) ("A defendant who attacks his plea to a lesser included offense knows that if he is successful he will be faced with trial of the greater offense charged in the indictment but withdrawn as a result of the plea bargain.").

Finally, Petitioner argues that the government-offered ballistic testimony at trial was evidence of vindictiveness. (Dkt. No. 1 at 6). The Court finds this argument is procedurally barred because it was never raised nor ruled upon by the PCR court. (Dkt. No. 22-3 at 44-95). Further, the Court finds this argument is unsupported by the record. The trial judge ruled that the state could not offer any scientific evidence regarding ballistics (Dkt. No. 22-1 at 46), and no exhibits were introduced (Dkt. Nos. 22-2 at 102, 22-3 at 109). Petitioner argues that Dr. Dembosky's testimony violated this order (Dkt. No. 34 at 29), but his testimony was not about ballistics but his autopsy of the victim (Dkt. No. 22-1 at 91-96). Therefore, the Court finds Respondent is entitled to summary judgment as to ground two.

3. *Due Process*

For his third ground, Petitioner argues his due process rights were violated when the state destroyed ballistic evidence in its possession before his trial for murder. (Dkt. No. 1 at 7). "When the issue is preservation of potentially exculpatory evidence, the defendant must show bad faith on the part of the government to prevail on a violation of due process claim. . . . [T]he presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the *exculpatory value* of the evidence *at the time it was lost or destroyed.*" *Holdren v. Legursky*, 16 F.3d 57, 59-60 (4th Cir. 1994) (*citing Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988)). Here, Petitioner cannot show bad faith. The evidence was not exculpatory, but showed that the bullet recovered from the victim's body matched the gun found in Petitioner's possession. (Dkt. No. 22-3 at 116-17); *Illinois v. Fisher*, 540 U.S. 544, 548 (2004) (finding lack of bad faith where evidence inculpates, not exculpates, defendant). Further, the trial court found that the gun evidence was destroyed by the Cheraw Police Department only upon instruction from the City Administrator to the City Police Department. (Dkt. No. 22-1 at 47). In these circumstances, Petitioner cannot show that destruction of the ballistic evidence was a violation of due process. Respondent's motion for summary judgment as to ground three is therefore granted.

4. *Ineffective Assistance of Counsel*

Petitioner's final ground is that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment. (Dkt. No. 1 at 10). Where allegations of ineffective assistance of counsel are made, the question is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). First, the Petitioner must show that counsel made errors so serious that counsel's performance was below the objective

standard of reasonableness guaranteed by the Sixth Amendment. *Id.* at 688. Second, the Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Review by this Court of "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential . . . and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011). In applying § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Petitioner first argues trial counsel was ineffective for failing to introduce medical records which showed that Petitioner shot himself following the shooting of the victim. Petitioner argues this could have led the jury to believe his crime was a crime of passion. (Dkt. No. 1 at 10). Trial counsel stated, and the PCR court held, that it was counsel's strategy not to mention Petitioner's self-inflicted gunshot because she was concerned the jury would believe it was a "murder-suicide." (Dkt. No. 22-3 at 91-92).

The Court finds that this strategy is entitled to deference. Courts have shown a marked and understandable reluctance to characterize tactical or strategic decisions by trial counsel as ineffective assistance. *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002). A "strong presumption" exists that counsel's actions were the function of trial tactics and not "sheer neglect." *Harrington*, 131 S. Ct. at 790. This rule, however, is not absolute where the purported strategic decision is based upon an error or ignorance of the law by trial counsel. *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2nd Cir. 2009) (omissions based upon "oversight, carelessness, ineptitude or laziness" cannot be explained as "trial strategy"); *Ramonez v. Berghuis*, 490 F.3d 482, 488 (6th Cir. 2007) (a strategic choice made without a professionally competent investigation of the

Petitioner's options is "erected upon . . . a rotten foundation" and is not entitled to deference). Trial counsel was aware that Petitioner had a gun and ammunition in his truck, and that witnesses would testify that he was looking for victim on the day of the murder. (Dkt. No. 22-3 at 72). She believed a jury would find Petitioner was carrying out a murder-suicide plan. (*Id.*) Counsel did not wish to put Petitioner on the stand, and so had to decide to choose some arguments over others. (*Id.* at 73). The Court therefore finds that the PCR court reasonably held that trial counsel did not violate *Strickland* based on her decision not to introduce the medical records.

Petitioner next argues that trial counsel was ineffective for failing to subpoena the testimony of eye witnesses whom he argues would have revealed a prior altercation between the Petitioner and the victim's boyfriend, and that the victim's boyfriend passed a brown paper bag to victim at the time of the shooting. (Dkt. No. 1 at 10). The PCR court held that trial counsel spoke to these witnesses before trial, that they were State witnesses, and that trial counsel believed their testimony would not be beneficial to Petitioner's case. (Dkt. No. 22-3 at 91). This is supported by the record. (Dkt. Nos. 22-1 at 20-21; 22-3 at 71-72). Further, these witnesses did not testify at the PCR hearing, and the PCR court held that petitioner could not establish prejudice without producing the testimony of the witnesses. (Dkt. No. 2203 at 93); *see Bassette v. Thompson*, 915 F.2d 932 (4th Cir. 1990). The Court therefore finds that the PCR court reasonably held that trial counsel did not violate *Strickland* based on her decision not to call these witnesses.

Finally, Petitioner argues trial counsel was ineffective for failing to move for a continuance when she found out shortly before trial that the ballistic evidence was destroyed. (Dkt. No. 1 at 10). Petitioner argues that a continuance could have shown inaccuracies in

witnesses' testimony about the number of shots fired. (Dkt. No. 34 at 54-56). The PCR court found no error for failing to request a continuance. (Dkt. No. 22-3 at 93). Trial counsel testified that she did not think that the ballistic evidence was important in light of the eyewitness reports of the shooting as well as the coroner's autopsy testimony. (*Id.* at 70). Trial counsel did not see any need to ask for continuance in light of this other evidence. (*Id.*). Recognizing the eyewitness testimony of the shooting, and the deference the Court owes to counsel's trial strategy, the Court holds that the PCR court reasonably found trial counsel did not violate *Strickland* in failing to request a continuance. Therefore, Respondent's motion for summary judgment regarding ground four of his habeas petition is granted.

## Conclusion

Based on the reasoning set forth above, the Court **grants** the respondent's motion for summary judgment (Dkt. No. 23) and **denies** Petitioner's motion for summary judgment (Dkt. No. 33) as moot.

### Certificate of Appealability

The governing law provides that:

> (c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies the standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*,

252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **denied**.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

September 13, 2012